IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANTHONY D. W.,[1]                )
                                 )
             Plaintiff,          )
                                 )
vs.                              )  Case No. 17-cv-944-CJP[2]
                                 )
COMMISSIONER of SOCIAL           )
SECURITY,                        )
                                 )
             Defendant.          )

## **MEMORANDUM and ORDER**

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## **Procedural History**

Plaintiff applied for benefits in June 2013, alleging disability beginning on February 28, 2011. The alleged onset date was later amended to January 30, 2013. After holding an evidentiary hearing, ALJ Scot Gulick denied the application on October 3, 2016. (Tr. 15-30). The Appeals Council denied review, and the decision of the ALJ became the final agency decision subject to judicial review. (Tr. 1).

Administrative remedies have been exhausted and a timely complaint was

---

[1] In keeping with the court's recently adopted practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 18.

1

filed in this Court.

## Issue Raised by Plaintiff

Plaintiff raises the following point:

1. Whether the ALJ erred by failing to account for deficits of concentration, persistence, or pace in the residual functional capacity finding.

## Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes. In this context, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).[3]

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals

---

[3] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v.*

*Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir.

2010), and cases cited therein.

## **The Decision of the ALJ**

ALJ Gulick followed the five-step analytical framework described above. He determined that plaintiff had not been engaged in substantial gainful activity since the alleged onset date. He was insured for DIB only through June 30, 2016. The ALJ found that plaintiff had severe impairments of cardiomyopathy, valvular heart disease, history of aortic aneurysm repair with aortic valve replacement, history of heart attack and stroke, neurocognitive disorder, seizure disorder, major depressive disorder, and anxiety. He determined that these impairments did not meet or equal a listed impairment. At this step, the ALJ determined that plaintiff had moderate difficulties in ability to maintain concentration, persistence or pace. (Tr. 20).

The ALJ determined that plaintiff had the residual functional capacity (FC) to do work at the light exertional level, limited to standing for 4 hours; walking for 2 hours; occasional operation of foot controls with the left lower extremity; occasional climbing of ramps, stairs, ladders, ropes and scaffolds; frequent balancing; occasional stooping, kneeling, crouching, and crawling; no exposure to unprotected heights or moving machinery; occasional operation of a motor vehicle; and "limited to understand[ing], remembering, and carrying out simple, routine tasks."

Based upon the testimony of a vocational expert, the ALJ found that plaintiff could not perform his past work. However, he was not disabled because he was capable of performing other jobs that exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the point raised by plaintiff and is confined to the relevant time period.

1. **Agency Forms**

Plaintiff was born in 1967. (Tr. 354). He was within a few months of his fiftieth birthday on the date of the ALJ's decision. (Tr. 29). He had worked as a finance director and manager for car dealerships, as a forensic investigator for the state police crime lab, as a pay day loan officer, and as a car salesman. (Tr. 359).

2. **Evidentiary Hearing**

Three evidentiary hearings were held. Plaintiff was represented by an attorney at all three. (Tr. 41, 54, 66).

Plaintiff testified regarding his impairments, symptoms, and activities at the first hearing. (Tr. 68-78).

A vocational expert testified at the third hearing. The ALJ asked her a hypothetical question that corresponded to the ultimate RFC findings. The VE testified that this person would be unable to do plaintiff's past work because it was not simple and routine. However, he could do other jobs such as marking clerk, shipping weigher, and router. (Tr. 47-48).

3. **Medical Records**

Medical expert Dr. Morton Tavel indicated that plaintiff had a history of aortic valve replacement with aneurism repair, decreased cardiac function, cerebral

infarction, probable myocardial infarction, probably epileptic type seizures, cardiac arrest with implantation of defibrillator, depression with anxiety, and marijuana abuse. (Tr. 898).

Plaintiff was treated for major depressive disorder. He was prescribed Prozac. (Tr. 696-722, 828-836).

4.   **State Agency Consultants' Mental RFC Assessment**

In October 2013, Russell Taylor, Ph.D., assessed plaintiff's mental RFC based on a review of the file contents. He used an electronic version of an agency form that is commonly used for this purpose in social security cases. (Tr. 101-103). The form consists of a series of questions and a list of mental activities. The consultant is asked to rate the applicant's limitations in these areas.

Dr. Taylor answered "yes" to the question "Does the individual have sustained concentration and persistence limitations?" He rated plaintiff as "moderately limited" in ability to carry out detailed instructions, ability to maintain attention and concentration for extended periods, and ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. He also rated plaintiff as moderately limited in ability to respond appropriately to changes in the work setting. In the section for narrative remarks, Dr. Taylor wrote, "The clmt retains the mental capacity to understand and remember simple and detailed instructions. The clmt would have a moderate limitation persisting for a normal work week due to MDI's." (Tr. 103).

A second state agency consultant, Dr. Boyenga, agreed with Dr. Taylor's

analysis in April 2014. (Tr. 130-131).

## Analysis

Plaintiff argues that the RFC assessment was erroneous because it failed to account for his moderate limitation in maintaining concentration, persistence, or pace.

The ALJ's RFC assessment and the hypothetical question posed to the VE must both incorporate all of the limitations that are supported by the record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). This is a well-established rule. See, *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009)(collecting cases). If the ALJ finds that a plaintiff has a moderate limitation in maintaining concentration, persistence or pace, that limitation must be accounted for in the hypothetical question posed to the VE; in most cases, limiting the plaintiff to simple, repetitive tasks or to unskilled work is not sufficient to account for moderate concentration difficulties. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010).

Here, the ALJ found that plaintiff had moderate difficulties in maintaining concentration, persistence or pace at step three of the sequential analysis when determining whether plaintiff's mental impairments meet or equal a listed impairment. (Tr. 20). He noted that, while the step three determination is not a mental RFC assessment, the ultimate RFC assessment "reflects the degree of limitation I have found in the 'paragraph B' mental function analysis." (Tr. 21). Later, when explaining his RFC assessment, the ALJ gave "great weight" to the opinions of Drs. Taylor and Boyenga, noting that they found that plaintiff had moderate limitations in maintaining concentration persistence or pace. (Tr. 26).

8

However, neither the hypothetical question posed to the VE nor the RFC assessment mentioned a limitation in concentration, persistence or pace. Rather, the ALJ limited plaintiff to understanding, remembering, and carrying out simple, routine tasks.

The Seventh Circuit has repeatedly held, with exceptions not applicable here, that a limitation to simple, repetitive tasks or unskilled work does not adequately account for a moderate limitation in maintaining concentration, persistence or pace. In *Stewart, supra,* a case decided in 2009, the Court observed, "The Commissioner continues to defend the ALJ's attempt to account for mental impairments by restricting the hypothetical to 'simple' tasks, and we and our sister courts continue to reject the Commissioner's position." *Stewart*, 561 F.3d at 685. The Court has reaffirmed that position several times in recent years. *O'Connor-Spinner, supra; Yurt v. Colvin,* 758 F.3d 850, 857 (7th Cir. 2014); *Varga v. Colvin,* 794 F.3d 809, 814 (7th Cir. 2015); *Taylor v. Colvin,* 829 F.3d 799, 802 (7th Cir. 2016).

The Commissioner defends the ALJ's decision by arguing that none of plaintiff's doctors assessed any limitations related to concentration, persistence or pace. That is true, but irrelevant; the state agency consultants found that plaintiff had moderate limitations in this area, and the ALJ agreed that plaintiff had moderate limitations in that area and said that the RFC assessment would reflect those limitations.

Plaintiff cited *Stewart, Yurt,* and *Varga* in his brief. Remarkably, defendant discussed none of those cases and makes no attempt to distinguish them. Rather,

she cites a district court case for the proposition that "the lesson from *O'Connor-Spinner* is not that the administrative law judge must use particular 'magic language' when setting forth the plaintiff's residual functional capacity, but rather that the language he uses must reflect all of the limitations the plaintiff has." Doc. 14, p. 11. That observation ignores the Seventh Circuit's repeated holding that a limitation to simple, routine work does not adequately capture a moderate limitation in concentration, persistence, or pace.

The Commissioner defends the ALJ's decision by arguing that Drs. Taylor and Boyenga said in their narrative remarks that plaintiff could understand and remember simple instructions. See, Doc. 14, pp. 9-10. However, the Seventh Circuit has been very clear that a limitation to simple instructions or simple, routine tasks does not adequately account for a moderate limitation in maintaining concentration, persistence, or pace. "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620.

Further, Drs. Taylor and Boyenga also opined that plaintiff would have a moderate limitation persisting for a normal work week. The ALJ ignored this part of the opinion in his decision, and the Commissioner likewise ignores it in her brief.

The ALJ's error requires remand. "If a decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review," a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir., 2012)(internal citation omitted).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during

the relevant period, or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying plaintiff's application for disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE: August 6, 2018.**

s/ Clifford J. Proud
**CLIFFIRD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**